

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00182-CR
_____

STEVEN FLOYD WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 31482

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Lamar County jury found Steven Floyd Williams guilty of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (Supp.). After Williams pled true to the State's punishment enhancement allegation, the jury assessed a sentence of seventeen years' imprisonment with a $5,000.00 fine. In his sole point of error on appeal, Williams argues that the evidence was legally insufficient to support the jury's verdict.

We conclude that the State presented legally sufficient evidence to support the jury's finding of Williams's guilt. Even so, we find that the judgment mistakenly reflects that Williams pled not true to the State's punishment enhancement allegation. As a result, we modify the trial court's judgment to properly reflect Williams's plea and affirm the judgment, as modified.

## I.      Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

Williams admits that he was previously convicted of felony family-violence assault by occlusion on February 22, 2023. His judgment of conviction for that offense shows that Williams was sentenced to four years' imprisonment. In its indictment here, the State alleged that Williams "intentionally, knowingly, and recklessly possess[ed] a firearm before the fifth anniversary of the defendant's release from confinement following conviction of the felony." Williams argues that the evidence was legally insufficient to support his conviction.

### A.      Standard of Review

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson v. State*, 589 S.W.3d 292, 298 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

1997)). "A person who has been convicted of a felony commits an offense if he possesses a firearm" "after conviction and before the fifth anniversary of the person's release from confinement." TEX. PENAL CODE ANN. § 46.04(a)(1).

As a reviewing court, we look to all the evidence in the light most favorable to the State to determine whether any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). In performing our evidentiary-sufficiency review, therefore, we "may not re-evaluate the weight and credibility of the record evidence and . . . substitute our judgment for that of the [jury]." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (recognizing "the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Williamson*, 589 S.W.3d at 297 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214

3

S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

### B. The Links Test

"'Possession' is defined as 'actual care, custody, control, or management.'" *Swapsy v. State*, 562 S.W.3d 161, 164 (Tex. App.—Texarkana 2018, no pet.) (quoting TEX. PENAL CODE ANN. § 1.07(a)(39)). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* (quoting TEX. PENAL CODE ANN. § 6.01(b)). "To obtain a conviction for possession of a firearm, the State must show that the accused not only exercised actual care, control, or custody of the firearm, but also that he was conscious of his connection with it and that he possessed it knowingly." *Id.* at 164–65 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "[E]vidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Id.* at 165 (alteration in original) (quoting *Brown*, 911 S.W.2d at 747). "However, these affirmative links must demonstrate that 'the accused was aware of the object, knew what it was, and recognized his or her connection to it.'" *Id.* (quoting *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.)).

"The evidence showing these links may be direct or circumstantial, but the evidence must establish that the connection between the accused and the firearm is more than fortuitous." *Id.* (citing *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd)).

4

"Therefore, the mere presence of the accused at the location where a firearm is found is not sufficient, in and of itself, to establish his knowing possession." *Id.* (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). "This rule protects the innocent bystander (such as a relative, friend, or even stranger to the actual possessor) from conviction merely due to his fortuitous proximity to a firearm belonging to someone else." *Id.* (citing *Evans*, 202 S.W.3d at 162). "However, the defendant's presence or proximity to the weapon, combined with other evidence, may be sufficient to establish this element." *Id.* (citing *Evans*, 202 S.W.3d at 162).

"Certain factors, either alone or in combination, may be considered in deciding whether the evidence is legally sufficient to circumstantially establish an accused's knowing possession of a firearm." *Id.* Such factors include the following:

> (1) the defendant's presence when the search was conducted, (2) whether the firearm was in plain view, (3) whether the defendant was in close proximity to and had access to the firearm, (4) whether the defendant had a special connection to the firearm, (5) whether the defendant possessed other contraband when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether the defendant owned or had the right to possess the place where the firearm was found, (10) whether the place where the firearm was found was enclosed, (11) whether conflicting statements on relevant matters were given by the persons involved, and (12) whether the defendant's conduct indicated a consciousness of guilt.

*Id.* (quoting *Gordy v. State*, No. 06-18-00057-CR, 2018 WL 4472222, at *3 (Tex. App.—Texarkana Sept. 19, 2018, pet. ref'd.) (mem. op., not designated for publication)).

"The absence of various links does not constitute evidence of innocence to be weighed against the links present." *Id.* (citing *Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). "Rather, it is the logical force of the links, rather than the

number of links, that is dispositive." *Id.* (citing *Evans*, 202 S.W.3d at 161–62). "Further, the links need not exclude every other reasonable hypothesis but the defendant's guilt." *Id.* (citing *Brown*, 911 S.W.2d at 748).

### C.    The Evidence at Trial

The evidence at trial established that Williams was married to Patricia Jordan, who rented or owned a residence located on Kessler Drive and lived there with her teenage children. Brenton Middleton, a detective with the Paris Police Department (PPD), testified that he obtained a warrant for Williams's arrest. Multiple officers were surveilling the home on Kessler Drive and reported seeing Williams there.

According to Middleton, PPD officers had spoken with Jordan and learned that Williams was "inside his home by himself" before the warrant was executed. According to Middleton, the PPD knew there was "potentially a firearm involved." Over the telephone, Middleton obtained consent from Jordan "to search the [Kessler Drive] residence for a firearm that was used in the offense" forming the basis of Williams's arrest warrant.

Middleton testified that the PPD's attempt to execute Williams's arrest warrant "turned into a barricaded-suspect situation," with Williams refusing to exit the home for a couple of hours. According to Middleton, "SWAT[1] was activated and they" convinced Williams to come outside the home and surrender to law enforcement. After Williams was arrested, Middleton said that he located a firearm in the master bedroom of the Kessler Drive residence, in a set of plastic drawers that housed a television. He testified, "[t]he firearm was in the top drawer, just

---

[1]Special Weapons and Tactics [SWAT].

6

laid there on top." According to Middleton, the master bedroom contained men and women's clothes "just everywhere together." Yet, men's clothing was hanging immediately beside the plastic drawers that contained the firearm. Middleton testified that there was no one inside the home except for Williams while the search warrant was executed.

Williams's mother, Joanne, testified that she was a retired police detective. According to Joanne, Williams lived in Royce City with her and her husband, not with Jordan. Joanne testified that Williams did not own any firearms and that she did not see him with a firearm.

After hearing this evidence, the jury determined that Williams had unlawfully possessed a firearm.

### D.     Analysis

It is undisputed that Williams was previously convicted of a felony and that the alleged offense occurred within five years of his release from confinement. In his sole point of error on appeal, Williams argues that the evidence is insufficient to show that he was aware of the firearm or actually possessed it. To resolve the issue of knowing possession, we apply the links test.

Here, we find that the logical force of the applicable links, when taken together, had a strong tendency to connect Williams to the firearm. Middleton testified that he had obtained a warrant for Williams's arrest for an offense that potentially involved a firearm. Williams was the sole occupant of the home at the time the PPD conducted the search, which weighed against him. *See Smith*, 118 S.W.3d at 843. According to Middleton, Jordan also referred to her home as Williams's home when she stated Williams was "inside his home by himself." From photographs of the master bedroom, which contained men's and women's clothing, the jury

7

could reasonably infer that Williams stayed in the master bedroom with his wife. As a result, the jury could have concluded that Williams had the right to access and possess the top plastic drawer where the firearm was found.[2] Right next to the plastic drawers, men's clothing was hanging. Thus, the jury could infer that Williams had possession and control of, and access to, the firearm.

It is true that Williams did not flee or make furtive gestures or incriminating statements, and nothing shows that the firearm was in plain view or that Williams had a special connection to it. Even so, the jury could have determined that Williams barricaded himself in the home because he knew he was not supposed to possess a firearm and that his refusal to exit the home until SWAT arrived indicated his guilt. *See Swapsy*, 562 S.W.3d at 167; *Palomo v. State*, 352 S.W.3d 87, 91 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (observing that a defendant's decision to barricade himself during a standoff with police was indicative of his guilt). Accordingly, the jury could have reasonably inferred that Williams had access to and possession of the firearm or, at a minimum, joint access to and possession of Jordan's firearm. *See Swapsy*, 562 S.W.3d at 167 ("joint possession is sufficient"); *see also Jones v. State*, 338 S.W.3d 725, 743 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

After viewing the evidence in the light most favorable to the jury's verdict, we find that a rational jury could have concluded that Williams was conscious of his connection to the firearm and knowingly possessed it after a conviction and before the fifth anniversary of his release from

---

[2]From the evidence, we cannot determine whether the firearm was in plain view since there was no testimony as to whether the top drawer was open or closed when the firearm was found.

8

confinement. As a result, we find the evidence legally sufficient to support Williams's guilt for unlawful possession of a firearm by a felon, and we overrule his sole point of error.

## II. We Modify the Judgment to Reflect Williams's Plea to an Enhancement Allegation

Next, the State notes that the judgment should be modified to reflect Williams's plea of true to its punishment enhancement allegation. We agree.

The State alleged that Williams was previously convicted of the felony offense of delivery of more than one gram but less than four grams of cocaine. Williams pled true to the State's allegation before the jury. However, the trial court's judgment mistakenly states that Williams pled "NOT TRUE" to the punishment enhancement allegation.

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). Accordingly, we modify the judgment to properly reflect Williams's plea.

## III. Conclusion

We modify the trial court's judgment to reflect that Williams pled "TRUE" to the State's punishment enhancement allegation. As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     June 8, 2026
Date Decided:       July 2, 2026

Do Not Publish

9